IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DYNAPASS IP HOLDINGS LLC,<br><br>      Plaintiff<br>v.<br><br>PLAINSCAPITAL BANK, and HILLTOP HOLDINGS INC.,<br><br>      Defendants. | CIVIL ACTION NO. 2:22-cv-00213<br><br>ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT<br><br>**JURY TRIAL DEMANDED** |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Dynapass IP Holdings LLC ("Plaintiff") files this original complaint against Hilltop Holdings Inc. and PlainsCapital Bank, (collectively "Defendants") alleging, based on Plaintiff's own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**PARTIES**

1.      Plaintiff is a Delaware limited liability company, with its principal place of business at 16192 Coastal Highway, Lewes, Delaware 19958.

2.      Defendant Plains Capital Bank is a Texas company with a principal place of business at 2323 Victory Avenue, Suite 1400, Dallas, TX 75219.  Upon information and belief, Defendant PlainsCapital Bank is a wholly owned subsidiary of Defendant Hilltop Holdings Inc. PlainsCapital Bank's registered agent for service is Scott J. Luedke at 6565 Hillcrest Ave., Dallas, TX 75205.

3.      Defendant Hilltop Holdings Inc. is a Maryland company with a principal place of business at 325 North Saint Paul Street, Suite 800, Dallas, TX 75201-3852.  Defendant Hilltop

Holdings Inc.'s registered agent for service is CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

## JURISDICTION AND VENUE

4. This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1338(a).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1400(b) and 1391(c).

6. Defendants are subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to Defendants' presence and substantial business in this forum, including (i) at least a portion of the infringements alleged herein; and/or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Texas and in this district.

7. Specifically, Defendants intend to do and do business in Texas, directly or through intermediaries and offer their products and/or services to customers and potential customers located in Texas, including in this district.

8. Defendants maintain a regular and established place of business in this district, including at 2500 Legacy Dr., Suite 150 Frisco, TX 75034.

## COUNT I

## DIRECT INFRINGEMENT OF U.S. PATENT NO. 6,993,658

9. Plaintiff repeats and re-alleges the allegations in Paragraphs 1-8 as if fully set forth in their entirety.

10. On January 31, 2006, U.S. Patent No. 6,993,658 (the "'658 Patent") was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Use of Personal Communication Devices for User Authentication." A copy of the '658 Patent is attached as Exhibit A.

11. Plaintiff is the owner of the '658 Patent, with all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '658 Patent against infringers, and to collect damages for all relevant times.

12. The '658 Patent describes systems for authenticating users to secure systems through user tokens that are supplied to personal communication devices such as mobile telephones and pagers.

13. The named inventors of the '658 Patent recognized that secure systems at the time of the invention utilized a user ID and password pair to authenticate users. But those authentication methods suffered from several deficiencies including, but not limited to, inconvenience of frequent password changes and hard-to-remember passwords resulting in users writing down their passwords, which compromised security. The named inventors of the '658 Patent also recognized that two-factor authentication can improve the security of the authentication mechanism, while also improving user convenience.

14. In two-factor authentication, access and authentication to a secure system are determined by (1) secret information known to the user, such as a passcode, and (2) information provided to the user through an object possessed by the user, such as a token. The named inventors of the '658 Patent recognized that the user's personal communication device could be used as the "object possessed by the user" to receive a token. This process is depicted, for example, in Figure 1 of the '658 Patent, reproduced below:



FIG. 1

15.     The claims of the '658 Patent are not directed to an abstract idea. For example, claim 5 of the '658 Patent recites a user authentication system with a specific arrangement of devices and networking configuration. The claimed user authentication system authenticates users to a secure computer network. The authentication system includes a user database that associates the user's personal communication device with the user. That personal communication device communicates with the user authentication system over a cell phone network.

16.     The claimed user authentication system also includes a control module that is configured to create new passwords based at least upon a token and a passcode. The token is not known to the user, whereas the passcode is known to the user. The control module associates the new password with the user. The token is transmitted to the user through the cell phone network.

17.     The claimed user authentication system also includes an authentication module that receives the password from the user through a secure computer network. Claim 5 requires that the secure computer network is different from the cell phone network. Receipt of the password

4

activates access to the user's account. Access to the user account is deactivated after a predetermined amount of time.

18. Taken as a whole, the claimed inventions of the '658 Patent are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the functioning and operation of user authentication systems. The '658 Patent also acknowledges other forms of two-factor authentication, such as the RSA SecurID product, such that the claims of the '658 Patent do not preempt the field.

19. The written description of the '658 Patent describes each of the limitations of the claims in technical detail, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

20. Defendants have made, had made, used, imported, provided, supplied, distributed, sold, or offered for sale infringing products and/or systems, including, for example, but not limited to, the systems and applications Defendants use for access and authorization to their online banking system (the "Accused Instrumentalities").

21. The Accused Instrumentalities include, for example, but are not limited to, the systems and applications that provide two-factor authentication to Defendants' customers as part of the sign-on procedure for Defendants' online banking system described and depicted below:

## 3. Security

Cyber threats and data breaches are a top concern for businesses of all sizes. Companies are continually looking to incorporate tools and systems designed to help deter fraud and security threats. A bank-specific mobile app, like the PlainsCapital Bank app, connects business customers directly to their accounts, bypassing the need to log onto the mobile web. Plus, they are designed to work more closely with the bank's own security algorithms. Multi-factor authentication offers another level of robust security, not to mention the added fraud protection aspects particular to the mobile platform, including proactive monitoring and notification of suspicious account activity.

*See*, *e.g.*, https://www.plainscapital.com/blog/3-ways-your-business-can-benefit-from-mobile-banking/.

22. The Accused Instrumentalities include, for example, but are not limited to, a computer processor and a user database that associates users (e.g., Defendants' banking customers) with their personal communication device (e.g., mobile phone). Those personal communication devices are configured to communicate with the Accused Instrumentalities via a cell phone network.

23. The Accused Instrumentalities include, for example, but are not limited to, a control module that creates new passwords based at least upon a token and a passcode, wherein the token is not known to the user and the wherein the passcode is known to the user. The token includes, for example, but is not limited to, the access code provided by the Accused Instrumentalities.

24. The Accused Instrumentalities include, for example, but are not limited to, a communication module for transmitting the token to the personal communication device through the cell phone network, including, for example, but not limited to via the Short Message Service (SMS), which can also be referred to as text messaging as Defendants acknowledge:

> Additionally, every account you use for business should have sufficient login security. Be sure to enable MFA (multifactor authentication) or 2FA (two-factor authentication) on every account, especially email and financial accounts. When you set up a verification method, it's wise to use a different email than the main email you use for business. Verifying with an authentication app or a text to your phone is even better than verifying with an email.

*See*, *e.g.*, https://www.plainscapital.com/blog/how-to-protect-your-small-business-from-cybercrime/.

25. The Accused Instrumentalities include, for example, but are not limited to, an authentication module that receives the user's password from the user, through a secure computer network (e.g., Defendants' online banking system). The secure computer network is different than the cell phone network. The authentication module activates access to the user's account in response to the password and deactivates the account within a predetermined amount of time after activating the account, such that the user's account is then not accessible through any password via the secure computer network.

26. By making, having made, using, importing, providing, supplying, distributing, selling, or offering for sale the Accused Instrumentalities, Defendants have directly infringed (literally and/or under the doctrine of equivalents) at least Claim 5 of the '658 Patent. Defendants' infringement in this regard is ongoing.

27. Plaintiff has been damaged as a result of Defendants' infringing conduct as alleged above. Thus, Defendants are liable to Plaintiff in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

28. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '658 Patent.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

Plaintiff requests that the Court find in its favor and against Defendants, and that the Court grant Plaintiff the following relief:

a. Judgment that one or more claims of the '658 Patent have been infringed, either literally and/or under the doctrine of equivalents, by Defendants and/or all others acting in concert therewith;

b. Judgment that Defendants account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendants' infringing activities and other conduct complained of herein;

c. Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

d. That this Court declare this an exceptional case and award Plaintiff its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

e. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: June 17, 2022               By: */s/ Fred I. Williams*

                                                 Fred I. Williams
                                               Texas State Bar No. 00794855
                                               Michael Simons

Texas State Bar No. 24008042
WILLIAMS SIMONS & LANDIS PLLC
The Littlefield Building
601 Congress Ave., Suite 600
Austin, TX 78701
Tel: 512-543-1354
fwilliams@wsltrial.com
msimons@wsltrial.com

Todd E. Landis
State Bar No. 24030226
WILLIAMS SIMONS & LANDIS PLLC
2633 McKinney Ave., Suite 130 #366
Dallas, TX 75204
Tel: 512-543-1357
tlandis@wsltrial.com

John Wittenzellner
Pennsylvania State Bar No. 308996
WILLIAMS SIMONS & LANDIS PLLC
1735 Market Street, Suite A #453
Philadelphia, PA 19103
Tel: 512-543-1373
johnw@wsltrial.com

*Attorneys for Plaintiff Dynapass IP Holdings LLC*